UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JAMES STUART FALLER II,

      Plaintiff,

v.                                                    Case No.:  2:24-cv-606-SPC-KCD

BEASLEY BROADCAST GROUP,
INC., AUSTIN RHODES and
DAVID E. HUDSON,

      Defendants.

                           /

## OPINION AND ORDER

Before the Court is Defendants' Motion to Dismiss (Doc. 23).[1]  Plaintiff James Stuart Faller II filed a Response in opposition.  (Doc. 34). The Motion is now ripe for review.

Plaintiff sues Defendants for slander and libel (defamation), civil conspiracy, and civil rights violations.  Defendant Austin Rhodes hosts a radio talk show in Georgia.  It is on this show, as well as online, that Rhodes allegedly made defamatory statements about Plaintiff.  Defendant David Hudson (Rhodes' attorney) and Beasley Broadcast Group (the operator of Rhodes' radio show) enabled Rhodes to make the defamatory statements.  And

---

[1] At first, Defendants Beasley Broadcast Group and Austin Rhodes filed their own Motion to Dismiss (Doc. 17).  But subsequently, an almost identical Motion to Dismiss was filed by all three Defendants (Doc. 23).  So the Court denies the first Motion to Dismiss (Doc. 17) as moot.

it seems Hudson may have made some defamatory statements as well.  Apart

from defamation, Plaintiff claims Defendants conspired to commit various

wrongdoings, including false-light invasion of privacy, extortion, and

infringement on his First Amendment rights.  Plaintiff also brings claims

under 42 U.S.C. § 1985 and 18 U.S.C. § 875(b).

Defendant moves to dismiss Plaintiff's Amended Complaint on several

grounds, including failure to state a claim, lack of personal jurisdiction, lack of

subject-matter jurisdiction, res judicata, *Rooker-Feldman* doctrine, and statute

of limitations.  For the reasons discussed below, Plaintiff's Amended Complaint

is dismissed because the Court lacks personal jurisdiction over Defendants

Rhodes and Hudson, Plaintiff fails to state a claim, and he fails to establish

subject-matter jurisdiction.

The Court begins with personal jurisdiction.  No one disputes the Court

has personal jurisdiction over Beasley.  However, Rhodes and Hudson (who

both reside in Georgia) take issue with the Court's exercise of personal

jurisdiction over them.[2]  A federal court "undertakes a two-step inquiry in

---

[2] Plaintiff brings multiple claims under 42 U.S.C. § 1985, thus invoking federal question jurisdiction.  "In a case arising under a federal statute, a court must first determine whether the applicable statute potentially confers jurisdiction over the defendant, and then determine whether the exercise of jurisdiction comports with due process." *Ganpat v. Aventure Inv. Realty, Inc.*, No. 20-60816-CIV, 2021 WL 6926414, at *2 (S.D. Fla. July 19, 2021).  "When a federal statute provides for nationwide service of process, it becomes the statutory basis for personal jurisdiction." *Republic of Panama v. BCCI Holdings*, 119 F.3d 935, 942 (11th Cir. 1997).  But when the federal statute is silent on service of process, the state's long-arm statute

determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *Carmouche v. Tamborlee Mgmt., Inc.,* 789 F.3d 1201, 1203 (11th Cir. 2015). Because Plaintiff has not shown Florida's long-arm statute reaches Hudson and Rhodes, the Court does not reach the Due Process issue.

Florida's long-arm statute provides for both general and specific personal jurisdiction. *See* Fla. Stat. § 48.193(1)-(2). General personal jurisdiction exists when a defendant "is engaged in substantial and not isolated activity within this state . . . whether or not the claim arises from that activity." Fla. Stat § 48.193(2). Plaintiff has alleged no facts to suggest the Court has general jurisdiction over Hudson and Rhodes, so the Court moves on to specific jurisdiction.

The Amended Complaint does not cite any provision of Florida's long-arm statute. All the same, Fla. Stat. § 48.193(1)(a)(2) extends jurisdiction to a nonresident who commits a tortious act within Florida.[3] Plaintiff alleges two categories of actions that could conceivably provide this Court personal

---

determines the existence of personal jurisdiction. *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626–27 (11th Cir. 1996). Because § 1985 is silent about service of process, the Court looks to the Florida long-arm statute for the federal claims.

[3] The Court construes Plaintiff's statutory claims under this provision. *Cf. Kernel Recs. Oy v. Mosley*, No. 09-21597-CIV-TORRES, 2010 WL 2812565, at *3 (S.D. Fla. July 5, 2010) (determining whether a statutory copyright violation was a tort committed within the state).

jurisdiction over Hudson and Rhodes: defamation and conspiracy (both statutory and common-law). *See Argos Glob. Partner Servs., LLC v. Ciuchini*, 446 F. Supp. 3d 1073, 1086 (S.D. Fla. 2020) ("Specific jurisdiction is claim-specific, and a court may hold it has specific personal jurisdiction over a defendant as to one claim but not as to another in the same suit.").

First, the conspiracy claims. Florida's long-arm statute reaches all the alleged participants in a civil conspiracy if at least one act in furtherance of the conspiracy was committed in Florida. *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1354 (S.D. Fla. 2009); *see also Machtinger v. Inertial Airline Servs., Inc.*, 937 So. 2d 730, 735 (Fla. Dist. Ct. App. 2006). There is no suggestion in the Amended Complaint that this is the case. So counts I, II, III, VI, IX, and X are dismissed as to Rhodes and Hudson for lack of personal jurisdiction.

Next are the defamation claims. Rhodes and Hudson purportedly made defamatory statements on Rhodes' Georgia radio show and on the internet. In *Internet Sols. Corp. v. Marshall*, the Florida Supreme Court established the standard for determining whether Florida's long-arm statute reaches a nonresident defendant for defamation:

> [A]llegedly defamatory material **about a Florida resident** placed on the Web and accessible in Florida constitutes an "electronic communication into Florida" when the material is accessed (or "published") in Florida. . . . By posting allegedly defamatory material on the Web **about a Florida resident**, the poster has directed the

> communication **about a Florida resident** to readers worldwide,
> including potential readers within Florida.  When the posting is then
> accessed by a third party in Florida, the material has been "published"
> in Florida and the poster has communicated the material "into" Florida,
> thereby committing the tortious act of defamation within Florida.

*Internet Sols.*, 39 So. 3d at 1214-15 (emphasis added).[4]  Conspicuously, the

Florida Supreme Court limited its holding to instances when the target of the

defamatory material (the plaintiff) is a Florida-resident.  But it "has not

addressed whether the long-arm statute confers jurisdiction over a non-

resident defendant who made defamatory statements about a non-Florida

plaintiff on a website that was accessed by third parties in Florida." *Miller v.*

*Gizmodo Media Grp., LLC*, 383 F. Supp. 3d 1365, 1372 (S.D. Fla. 2019).

In addressing this dilemma, at least two courts have interpreted *Internet*

*Sols.* as requiring the defamation plaintiff to be a Florida resident for the long-

arm statute to reach the nonresident defendants.  *See Dean v. Easterling*, No.

3:19-CV-566-J-32JRK, 2020 WL 1665482, at *4 (M.D. Fla. Apr. 3, 2020); *Vorbe*

*v. Morisseau*, No. 1:14-CV-20751, 2014 WL 12637924, at *3 (S.D. Fla. Aug. 27,

2014).  The Court agrees with these decisions.  This conclusion is consistent

with the unambiguous language of the Florida Supreme Court in *Internet Sols*,

which is explicitly limited to Florida plaintiffs.  *See Diamond Crystal Brands,*

---

[4] The same standard applies defamatory statements issued over broadcasts, such as
television and radio.  *See Sifonte v. Fonseca, No. 1:21-CV-20543,* 2022 WL 4110705, at *9
(S.D. Fla. Aug. 12, 2022), *report and recommendation adopted*, No. 21-20543-CIV, 2022 WL
4111199 (S.D. Fla. Sept. 8, 2022) (applying *Internet Sols.* framework to alleged defamatory
statements broadcasted over television network).

*Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1258 (11th Cir. 2010) ("When a

federal court uses a state long-arm statute, because the extent of the statute is

governed by state law, the federal court is required to construe it as would the

state's supreme court.").   Indeed, it is hard to comprehend what interest

Florida would have over a case such as this in which the alleged defamers are

nonresidents, the plaintiff is a nonresident, and the conduct occurred outside

the state.[5]  Because Plaintiff—who has no apparent ties to Florida—brought

this defamation action against Hudson and Rhodes—who have no apparent

ties to Florida—the Court does not have personal jurisdiction over them.  So

the defamation claims against Hudson and Rhodes (counts IV and V) are

dismissed with prejudice.

Plaintiff also fails to state a claim under Rule 12(b)(6).  To survive a Fed.

R. Civ. P. 12(b)(6) motion, a complaint must allege "sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft

v. Iqbal,* 556 U.S. 662, 678 (2009).   Bare "labels and conclusions, and a

formulaic recitation of the elements of a cause of action," do not suffice.  *Bell

Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A district court should dismiss

a claim when a party does not plead facts that make the claim facially

---

[5] It does not even seem Florida is a target audience of Rhodes' program.  According to Plaintiff, "The Austin Rhodes Show" broadcasts in the Southeast Georgia and Midwest Carolina markets.  (Doc. 10 at 1-2).

plausible. *See id.* at 570. A claim is facially plausible when a court can draw a reasonable inference, based on the facts pled, that the opposing party is liable for the alleged misconduct. *See Iqbal*, 556 U.S. at 678. This plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 557 (internal quotation marks omitted)).

Plaintiff fails to state a claim under 42 U.S.C. § 1985 (counts I and II). This statute has three subsections, but it appears Plaintiff intends to base these claims on the first. This section prohibits conspiracies between two or more persons "to prevent, by force, intimidation, or threat, any person from accepting or holding office, trust, or place of confidence under the United States, or from discharging any duties thereof[.]" 42 U.S.C. § 1985(1). "The purpose of this section is to proscribe conspiracies that interfere with the performance of official duties by federal officers." *Morast v. Lance*, 807 F.2d 926, 929 (11th Cir. 1987). But it affords protection only to federal officers. *See Whitehorn v. F.C.C.*, 235 F. Supp. 2d 1092, 1101 (D. Nev. 2002); *Canlis v. San Joaquin Sheriff's Posse Comitatus*, 641 F.2d 711, 717 (9th Cir. 1981) (noting 1985(1)'s "protections extend exclusively to the benefit of federal officers"). Plaintiff has not alleged that he is, or ever was, a federal officer or otherwise ran for federal office. So counts I and II are dismissed. *See Sykes v. City of Henderson,* No. 2:22-CV-00956-JAD-EJY, 2024 WL 3237909, at *6 (D. Nev.

June 28, 2024) (dismissing claim under § 1985(1) because plaintiff "has not alleged that he is an injured federal officer."); *Hall v. Georgia, Dep't of Pub. Safety*, No. 1:14-CV-03295-LMM, 2015 WL 12867005, at *4 (N.D. Ga. June 30, 2015), *aff'd sub nom.* 649 F. App'x 698 (11th Cir. 2016) (dismissing § 1985(1) claim because "Plaintiff's allegations do not concern federal officers or federal elections").

In count IV, Plaintiff asserts Defendants committed slander and libel against him by "publishing information that harms the reputation of Plaintiff[.]" (Doc. 10 at 16). And in count V, Plaintiff claims Defendants knew or should have known they were publishing lies about Plaintiff. (Doc. 10 at 16). There is a fundamental problem with these claims: the Court is clueless as to the substance of these allegedly false and defamatory statements because Plaintiff never alleges it. It should go without saying that, to state a defamation claim, "[a] plaintiff must specify what false statement or statements caused [his] injuries." *Markle v. Markle*, No. 8:22-CV-511-CEH-TGW, 2024 WL 1075339, at *10 (M.D. Fla. Mar. 12, 2024). Because Plaintiff fails to do so, his defamation claims (count IV and V) fail.

There is another issue with Plaintiff's defamation claims. Fla. Stat. § 770.01 establishes a condition precedent to bringing a defamation suit. It requires that, at least five days before filing the complaint, defamation plaintiffs serve media defendants with written notice "specifying . . . the

statements therein which he or she alleges to be false and defamatory." *Id.* To demonstrate compliance with this section, Plaintiff attaches to his Response a few emails in which he demanded that Hudson compel Rhodes to remove false statements from the radio station's website. (Doc. 34-1 at 38-41). But much like Plaintiff's Amended Complaint, none of these emails specify the alleged defamatory statements. Because Plaintiff failed to comply with § 770.01 before filing suit, his defamation claims must be dismissed. *See e.g., Trump Media & Tech. Grp. Corp. v. WP Co. LLC*, No. 8:23-CV-1535-TPB-AAS, 2024 WL 1013188, at *9 (M.D. Fla. Mar. 8, 2024) (dismissing defamation claim because § 770.01 notice failed to specify the false and defamatory statement).

Plaintiff's conspiracy to commit false light claim also fails. In Count III, Plaintiff alleges Defendants "combine[d], conspire[d] and confederate[d] . . . to put [Plaintiff] in a false light in the public by making false and derogatory statements[.]" (Doc. 10 at 16). But under Florida's single publication/single action rule, a plaintiff cannot recast his defamation claim into separate torts, such as false light invasion of privacy or conspiracy to commit false light invasion of privacy. *See Grayson v. No Labels, Inc.*, No. 6:20-CV-1824-PGB-LHP, 2022 WL 1222597, at *5 (M.D. Fla. Apr. 21, 2022) (citing *Ovadia v. Bloom*, 756 So. 2d 137, 140 (Fla. Dist. Ct. App. 2000)). Because it is unclear what defamatory statements support Plaintiff's defamation claim or his conspiracy to commit false light claim, the Court cannot be sure whether

Plaintiff runs afoul of the single publication rule.  Thus, his conspiracy to commit false light claim (count III) fails to state a claim.

In count VI, Plaintiff alleges that Defendants conspired to violate his civil rights.  Although he does not cite the statute, the Court construes this as a claim under 42 U.S.C. § 1985(3).  To state such a claim, Plaintiff must allege: (1) a conspiracy, (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy, (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Trawinski v. United Techs.*, 313 F.3d 1295, 1299 (11th Cir. 2002).  He also must allege that Defendants (the conspirators) were motivated by race or class-based discriminatory intent.  *White v. Sch. Bd. of Hillsborough Cnty.*, 636 F. Supp. 2d 1272, 1278 (M.D. Fla. 2007).  But Plaintiff alleges only that Defendants conspired to violate his civil rights by refusing to correct the defamatory statements and writings.  (Doc. 10 at 16).  He thus falls well short of stating a § 1985(3) claim, so count VI is dismissed.

Turning next to Plaintiff's claims under 18 U.S.C. § 875(b) (counts VII and VIII).  These claims are easily dismissed because 18 U.S.C. § 875(b) criminalizes extortion communications involving a threat to kidnap or injure another.  Not only is this statute completely inapplicable, but it is a criminal

statute with no private right of action.  *See Chadda v. Mullins*, No. CIV.A. 10-
4029, 2010 WL 4484622, at *2 (E.D. Pa. Nov. 9, 2010), *aff'd*, 430 F. App'x 192
(3d Cir. 2011) ("18 U.S.C. § 875 does not authorize a private right of action[.]").
So counts VII and VIII are also dismissed.

In count IX, Plaintiff asserts that Defendants conspired "to violate the
rights of [Plaintiff] by attempting to extort [Plaintiff] into signing a false
declaration in exchange for dropping a false claim of $66,000 in legal fees which
they created to extort [Plaintiff]."  (Doc. 10 at 17).  The Court liberally
construes this as a civil conspiracy to extort claim.  The elements of a civil
conspiracy are: (a) a conspiracy between two or more parties, (b) to do an
unlawful act or to do a lawful act by unlawful means, (c) the doing of some
overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result
of the acts performed pursuant to the conspiracy.  *Walters v. Blankenship*, 931
So. 2d 137, 140 (Fla. Dist. Ct. App. 2006).  Plaintiff's claim fails on multiple
fronts.  Although he alleges Defendants attempted to "extort" him into signing
a false declaration, it is unclear how the alleged conduct amounts to extortion
or was otherwise wrongful.  *See Groover v. Polk Cnty. Bd. of Cnty.
Commissioners*, 460 F. Supp. 3d 1242, 1258 (M.D. Fla. 2020) ("An actionable
conspiracy requires an actionable underlying tort or wrong.").  It is also unclear
what (if any) damages Plaintiff suffered.  And ultimately, the entire claim is
conclusory without any factual allegations.  *See Honig v. Kornfeld*, 339 F. Supp.

3d 1323, 1345 (S.D. Fla. 2018) ("Although Rule 9(b) does not list conspiracy as a cause of action which must be pled with particularity, a complaint will be dismissed where the allegations are conclusory and vague."). For each of these reasons, count IX is dismissed.

Finally, in count X, Plaintiff alleges Defendants conspired to violate his First Amendment rights. But "the federal constitution does not protect against injuries by purely private parties[.]" *Howard v. Wal-Mart*, 175 F. App'x 282, 283 (11th Cir. 2006). Because Defendants are private parties, Plaintiff fails to allege Defendants conspired to engage in an unlawful act or a lawful act by unlawful means. So count X is dismissed. *See Maletta v. Woodle*, No. 2:20-CV-1004-JES-MRM, 2021 WL 1894023, at *5 (M.D. Fla. May 11, 2021) (dismissing conspiracy to suppress plaintiffs' speech claim).

Shifting gears, the Court turns to subject-matter jurisdiction concerns. Plaintiff invokes both federal question and diversity jurisdiction. But with each of Plaintiff's federal claims dismissed, the Court's jurisdiction hinges on diversity under 28 U.S.C. § 1332(a). Along with satisfying the amount in controversy, diversity jurisdiction requires "complete diversity," meaning "every plaintiff must be diverse from every defendant." *Nat'l Loan Acquisitions Co. v. Pet Friendly, Inc.*, 743 F. App'x 390, 392 (11th Cir. 2018). Plaintiff fails to demonstrate the parties are diverse.

Plaintiff asserts he is a South Carolina "resident" with a Georgia mailing address. (Doc. 10 at 8). He then asserts that Rhodes lives in Augusta, Georgia. (Doc. 10 at 10). And although he does not allege Hudson's citizenship, Hudson filed an affidavit asserting he is a Georgia resident. (Doc. 24). But "[c]itizenship, not residence, is the key fact that must be alleged in the complaint to establish diversity for a natural person." *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994). A person's citizenship is determined by his "domicile," or "the place of his true, fixed, and permanent home and principal establishment . . . to which he has the intention of returning whenever he is absent therefrom." *McCormick v. Aderholt,* 293 F.3d 1254, 1257-58 (11th Cir. 2002). Thus, Plaintiff must establish his own domicile,[6] as well as the domicile of Hudson and Rhodes.

There is more. Plaintiff alleges that Beasley is a Delaware corporation "headquartered" in Naples, Florida. (Doc. 10 at 10). This too is insufficient. A corporation (like Beasley) is a citizen of both the state of its incorporation and the state where it has its *principal place of business.* 28 U.S.C. § 1332(c)(1). Plaintiff's assertion that Beasley is "headquartered" in Florida does not

---

[6] Plaintiff's domicile is even more confusing given he claims he resides in South Carolina but maintains a mailing address in Georgia. And it seems in prior cases, he has alleged he is a Georgia resident or otherwise located in Georgia. *See Faller v. Hendrix, et al.*, 4:20-cv-1347-LPR, Doc. 1 (E.D. Ark. June 22, 2020); *Faller v. Pelosi, et al.*, 1:20-cv-002-JRH-BKE, Doc. 1 (S.D. Ga. Jan. 7, 2020); *Faller, et al. v. Parker, et al.*, 1:00-cv-149-DHB, Doc. 1 (S.D. Ga. Aug. 3, 2000); 1:99-cv-217-DHB, Doc. 1 (S.D. Ga. Nov. 19, 1999). He must clarify this.

establish its principal place of business.  *See AUM Realty II FL, LLC v. Vantage Risk Specialty Ins. Co.*, No. 2:24-CV-635-SPC-NPM, 2024 WL 4045379, at \*2 (M.D. Fla. July 19, 2024) ("For diversity jurisdiction purposes, the Court is concerned with a corporation's principal place of business, not its headquarters.").  Rather, a corporation's "principal place of business" is its "nerve center.*" Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010).  This is the place "where a corporation's officers direct, control, and coordinate the corporation's activities." *Id.*  Because Plaintiff has not properly established any party's citizenship, the Court's jurisdiction is uncertain.

Defendants also argue this case is barred by res judicata.  When federal courts are asked to give res judicata effect to a state court judgment, the court must apply the res judicata principles of the law of the state whose decision bars further litigation.  *Kizzire v. Baptist Health Sys.*, Inc., 441 F.3d 1306, 1308 (11th Cir. 2006).  Defendants argue a prior Georgia decision bars Plaintiff's claim, so the Court applies Georgia law.

In Georgia, "[t]he doctrine of res judicata prevents the re-litigation of all claims which have already been adjudicated, or which could have been adjudicated, between identical parties or their privies in identical causes of action." *Georgia Power Co. v. Brandreth Farms, LLC*, 364 Ga. App. 816, 820 (2022) (citation omitted).  The doctrine "prevents a plaintiff from instituting a second complaint against a defendant on a claim that has already been

brought, after having previously been adjudged not to be entitled to the recovery sought on that claim." *Id.* "Three prerequisites must be satisfied before res judicata applies – (1) identity of the cause of action, (2) identity of the parties or their privies, and (3) previous adjudication on the merits by a court of competent jurisdiction." *Id.* The defendant bears the burden of proving res judicata. *Id.*

As for the first prerequisite, the defense must be sustained by "clear proof." *Id.* This means "[t]he defendant must introduce those parts of the record of the prior proceeding, duly certified, which are necessary to prove the defense." *Mayer v. Wylie*, 229 Ga. App. 282, 283 (1997). Although Defendants claim they attached the relevant documents (Doc. 23 at 1), they failed to do so. Thus, their res judicata argument is rejected. *See Travelers Cas. & Sur. Co. v. Stewart*, No. 1:14-CV-0837-AT, 2015 WL 11233188, at *6 n.8 (N.D. Ga. Aug. 7, 2015), *aff'd*, 663 F. App'x 784 (11th Cir. 2016) (rejecting res judicata argument because defendant "failed to present certified copies of the record demonstrating that [plaintiff's] coverage defenses were in fact litigated in the Underlying Lawsuit").[7]

---

[7] And, as discussed above, it is unclear what defamatory statements form the basis of Plaintiff's case. Without this information, the Court cannot determine whether *res judicata* applies. For this same reason, Defendant's *Rooker-Feldman* argument is rejected. Defendants may re-assert these defenses, if necessary, in any future Motion to Dismiss.

Finally, Defendants also raise a statute of limitations defense.   In Florida, an action for defamation must be commenced within two years from when the cause of action accrues.  Fla. Stat. § 95.11(4)(g).  A defamation claim accrues "at the time of the first publication or exhibition or utterance thereof[.]" Fla. Stat. § 770.07.  The problem is, the Court does not know the substance of the purportedly defamatory statements, let alone when they were first published.  So the Court cannot address the statute of limitations defense at this time.

To wrap up, Plaintiff has his work cut out for him.  He must amend counts I-VI and count IX to sufficiently state a claim (counts VII, VIII, and X are dismissed with prejudice), properly allege each parties' citizenship, and establish personal jurisdiction for the conspiracy claims over Hudson and Rhodes.  But before doing any of this, he must comply with Fla. Stat. § 770.01. Until then, his Amended Complaint is dismissed without prejudice. Alternatively, Plaintiff may dismiss this case and refile in Georgia, which appears to be the proper venue.[8]

Accordingly, it is now

**ORDERED:**

---

[8] Indeed, this case likely would have been dismissed for lack of venue.  *See* 28 U.S.C. § 1391(b); 28 U.S.C. § 1406(a).  But Defendants have waived venue since they did not raise it in their Motion to Dismiss.  *See* Fed. R. Civ. P. 12(h)(1)(A).

Defendants' Motion to Dismiss (Doc. 23) is **GRANTED in part.**

1.   Plaintiff's defamation claims (counts IV and V) against Hudson and Rhodes are **DISMISSED with prejudice.**

2.   Counts VII, VIII, and X are **DISMISSED with prejudice**.

3.   The remaining counts in Plaintiff's Amended Complaint (Doc. 10) are **DISMISSED without prejudice.**

4.   By **November 22, 2024**, Plaintiff may file a Second Amended Complaint.   Failure to do so will result in this case's dismissal without further notice.

5.   Defendants Beasley Broadcast Group and Austin Rhodes' Motion to Dismiss (Doc. 17) is **DENIED as moot.**

**DONE** and **ORDERED** in Fort Myers, Florida on November 1, 2024.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record

17